```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF RHODE ISLAND
_____
                                    )
WENDELLA SIGHTSEEING CO., INC.,     )
                                    )
          Plaintiff,                )    C.A. No. 17-388 WES
                                    )
     v.                             )
                                    )
BLOUNT BOATS, INC.,                 )
                                    )
          Defendant.                )
_____ )
                                    )
BLOUNT BOATS, INC.,                 )
                                    )
          Plaintiff,                )    C.A. No. 17-368 WES
                                    )
     v.                             )
                                    )
WENDELLA SIGHTSEEING CO., INC.,     )
                                    )
          Defendant.                )
_____ )
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

Before the Court in the first above-captioned case is Wendella Sightseeing Company, Inc.,'s ("Wendella") Motion to Remand, asking that its Miscellaneous Petition to Vacate the Arbitrators' Award be sent back to Providence County Superior Court. In the second above-captioned case, Wendella moves to dismiss on abstention grounds. Wendella requests that the Court dismiss Blount Boats, Inc.,'s ("Blount") Petition to Confirm Arbitral Award, in order to allow the Superior Court to consider both Wendella's Petition to Vacate and Blount's Petition to Confirm. Blount avers that remand

is improper, but if the Court disagrees, that it should retain jurisdiction over Blount's Petition to Confirm. For the reasons that follow, Wendella's Motions are GRANTED.

I. Background

Blount is a Rhode Island company that builds boats. Wendella is an Illinois company that provides boat tours on the Chicago River and Lake Michigan. Between 2006 and 2012, Blount built for and delivered to Wendella three boats, to be used in its tour business, pursuant to three separate, but similar, construction contracts. Over time each of these boats – the M/V Wendella, M/V Linnea, and M/V Lila – proved defective, at least in Wendella's estimation. For example, the M/V Wendella allegedly jettisoned its rudder, and the M/V Linnea and M/V Lila were allegedly constructed of shoddy steel. When Wendella drove the M/V Lila into a dock, the Coast Guard's post-allision inspection of the boat noted sundry construction defects.

In 2013, Wendella sued Blount in this Court. After Blount moved to compel arbitration pursuant to provisions in each of the three construction contracts, Wendella voluntarily dismissed its suit and submitted the dispute to the American Arbitration Association.

Wendella's First Amended Statement of Claim ("FASC") included three counts. The first, for fraudulent inducement, alleged that Blount made a representation that the M/V Lila would be

substantially similar (i.e., a sister ship) to the M/V Wendella – and that this persuaded Wendella to enter the contract for the M/V Lila – when, in fact, Blount intentionally manufactured the M/V Lila using inferior materials. The second count alleged that Blount breached each of the three construction contracts by failing to manufacture the boats according to agreed-to specifications. The third and final count was for breach of the contracts' express warranties, and relied on the same alleged manufacturing defects.

Although the arbitration panel found for Wendella on certain of its claims, it awarded Blount $807,595.19. Unsatisfied, Wendella filed a Petition to Vacate the arbitration award in Providence County Superior Court pursuant to section 10-3-12 of the Rhode Island Arbitration Act ("RIAA"). Four days later, Blount filed a Petition to Confirm the award in this Court, and removed Wendella's Petition to Vacate.

The fight now is over whether Wendella's Petition should be remanded, and if so, whether wise judicial administration weighs in favor of deferring all post-arbitral proceedings to state court.

II. Discussion

In support of its Motion to Remand, Wendella argues this Court has neither federal question nor admiralty jurisdiction over this case. It also contends that, even though the parties are diverse, Blount cannot remove as the in-forum party. If Wendella's case is

remanded, it urges the Court to abstain from hearing Blount's Petition to Confirm.

Blount, on the other hand, says that removal is appropriate here because the Court has federal question and admiralty jurisdiction, and in any event, Wendella waived its objection to diversity jurisdiction when it moved this Court to vacate the arbitration award. If remand is in the cards, Blount argues its Petition to Confirm should nevertheless remain in this Court.

A. Remand

There is no federal question jurisdiction over Wendella's Petition to Vacate. Federal district courts are vested with jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The well-pleaded complaint rule dictates that a suit "arises under" federal law "when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]." <u>Louisville & Nashville R.R. Co. v. Mottley</u>, 211 U.S. 149, 152 (1908). Suits pursuant to the Federal Arbitration Act ("FAA") – a federal law, no doubt – do not necessarily fall within federal jurisdiction. Even though it has generated a "body of federal substantive law . . . equally binding on state and federal courts," the FAA "bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over

the parties' dispute." Vaden v. Discover Bank, 556 U.S. 49, 58-59 (2009) (brackets and quotation marks omitted).

Therefore, Blount must find federal question jurisdiction someplace other than the FAA. And the First Circuit requires that this Court conduct its search for jurisdiction by "looking-through" Wendella's Petition to Vacate to the parties' underlying substantive dispute. Ortiz-Espinosa v. BBVA Sec. of P.R., Inc., 852 F.3d 36, 47 (1st Cir. 2017); accord Doscher v. Sea Port Grp. Sec., LLC, 832 F.3d 372, 388 (2d Cir. 2016) ("[A] federal district court faced with a § 10 petition may 'look through' the petition to the underlying dispute, applying to it the ordinary rules of federal-question jurisdiction . . . .").[1]

---

[1] The Court applies the FAA to this case – notwithstanding the fact that Wendella brought its Petition to Vacate under the RIAA – specifically section 10 which provides the grounds for vacating an arbitration award. This is because the parties' contracts involved interstate commerce. See M&L Power Servs., Inc. v. Am. Networks Int'l, 44 F. Supp. 2d 134, 139-40 (D.R.I. 1999) ("The [FAA] applies to any transaction involved in interstate commerce."); Howard Fields & Assocs. v. Grant Wailea Co., 848 F. Supp. 890, 893-94 (D. Haw. 1993) (finding transaction involved interstate commerce where parties were "incorporated in different states[;] . . . entered into a contract for consultation and construction administration services[, and] have traveled between Hawaii and California and can be presumed to have used the mails").

Moreover, their contracts did not contain language "that the parties intended that state law would govern vacatur of the arbitration award." Ortiz-Espinosa, 852 F.3d at 42 ("[W]here the FAA applies, it may be displaced by state law (if at all) only if the parties have so agreed explicitly."). The contracts' choice-of-law provisions requiring their terms "be determined under Rhode Island law" is not specific enough to displace the FAA in favor of the RIAA. Id. (applying the FAA where parties' agreement failed to

5

Blount admits that Wendella's claims in its FASC arise under state law, but argues that these claims nevertheless support federal question jurisdiction under the "federal ingredient doctrine." One & Ken Valley Hous. Grp. v. Maine State Hous. Auth., 716 F.3d 218, 224 (1st Cir. 2013). "This doctrine, which remains vibrant in this circuit but should be applied with caution, permits removal of a well pleaded claim sounding in state law which necessarily requires resolution of a substantial question of federal law." Metheny v. Becker, 352 F.3d 458, 460 (1st Cir. 2003) (citations and quotation marks omitted). In other words, federal district courts have federal question jurisdiction over disputes sounding entirely in state law in the "extremely rare," Gunn v. Minton, 568 U.S. 251, 257 (2013), instances where the complaint (or, in this case, the FASC) "reveals a federal issue that is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in a federal court without disrupting the federal-state balance of power." Municipality of Mayagüez v. Corporación Para El Desarrollo Del Oeste, Inc., 726 F.3d 8, 13 (1st Cir. 2013) (brackets and quotation marks omitted).

---

clearly "contemplate[] enforcement under" the [Puerto Rican Arbitration Act]"); see also Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 697 n.7 (4th Cir. 2012) ("Unquestionably, a contract's general choice-of-law provision does not displace federal arbitration law if the contract involves interstate commerce.").

Blount claims that determining the correct application of 46 U.S.C. § 6308(a) to the parties' arbitration proceeding is the substantial federal issue "justify[ing] resort to the experience, solicitude, and hope of uniformity that a federal forum offers." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005). Blount insists that 46 U.S.C. § 6308(a) – which states, that "no part of a report of marine casualty investigation . . . shall be admissible . . . in any civil or administrative proceeding" – defeats the argument made in Wendella's Motion to Vacate that the arbitration panel should have considered the Coast Guard's report on the Lila allision conclusive evidence of Blount's culpability therefor.

Whatever the merits of Blount's argument, this is not the type of issue that falls within the federal ingredient doctrine's ambit, for at least two reasons. First, a decision on the issue is unnecessary to review of the claims in Wendella's FASC. Blount's argument is a defensive one; it claims the Motion to Vacate is, at least in part, based on a premise that violates federal law. While this may be true, it is not necessary for a court to reach this argument, because the motion may well be decided on other grounds. The standard by which courts review arbitration awards under the FAA is extremely deferential. See 9 U.S.C. § 10(a); Teamsters Local Union No. 42 v. Supervalu, Inc., 212 F.3d 59, 61 (1st Cir. 2000) ("Arbitral awards are nearly impervious to judicial oversight.").

So it is just as likely that the Motion to Vacate could be decided without reference to the federal statute, as with it. See Metheny, 352 F.3d at 461 (finding answer to question of federal law unnecessary where its resolution would not preclude affirmance of zoning board decision afforded considerable deference).

Second, the issue is not substantial. A substantiality inquiry in this context "looks . . . to the importance of the issue to the federal system as a whole." Gunn, 568 U.S. at 260. "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit . . . ." Id. An issue is important to the federal system "where the outcome of the claim could turn on a new interpretation of a federal statute or regulation which will govern a large number of cases" or "where a claim between two private parties, though based in state law, directly challenges the propriety of an action taken by a federal department, agency, or service." Mayagüez, 726 F.3d at 14 (quotation marks omitted).

The potential 46 U.S.C. § 6308(a) issue fails to fit the mold: Blount does not argue that the interpretation of 46 U.S.C. § 6308(a) it proposes here would govern a large number of cases. And Blount challenges the action of the arbitrators, not the federal government. See Mayagüez, 726 F.3d at 15 ("HUD's performance was never at issue, and hence, unlike in Grable, the outcome in this case could not call into question thousands of other actions undertaken by a federal agency."). Cf. One & Ken, 716 F.3d at 225

(holding that federal ingredient jurisdiction exists where, <u>inter alia</u>, "[1] the dispute . . . turn[s] on the interpretation of a contract provision approved by a federal agency pursuant to a federal statutory scheme, [2] the alleged breach occurred only because the contractor was following the federal agency's explicit instructions; [3] the case presents a pure question of law that will govern numerous cases nationwide, [and 4] the federal government has an overwhelming interest in seeing the issue decided according to a uniform principle" (citations and quotation marks omitted)). There is no federal ingredient here and therefore no federal question jurisdiction over Wendella's Petition to Vacate.

Neither is there admiralty jurisdiction. Wendella's FASC contained one count sounding in tort (fraudulent inducement) and two in contract (breach of the parties' contracts and their express warranties). Torts are subject to maritime jurisdiction only when, <u>inter alia</u>, the "injury occurred on navigable water or that the injury was caused by a vessel on navigable water." <u>Florio v. Olson</u>, 129 F.3d 678, 680 (1st Cir. 1997). And under Rhode Island law, fraudulent inducement occurs when a party is persuaded to act under false pretenses, <u>see</u> <u>W. Reserve Life Assurance Co. v. Caramadre</u>, 847 F. Supp. 2d 329, 337 (D.R.I. 2012), which happened here, if at all, when Wendella entered the contract to buy the M/V Lila. See FASC 15 ("Wendella detrimentally relied on . . . Blount's false representation that Blount would build the M/V Lila as a sister

ship to the M/V Wendella and the M/V Linnea in entering into the Lila Contract."). Without an allegation of fraudulent inducement on navigable water, this Court lacks admiralty jurisdiction over Wendella's tort claim.

Wendella's contract claims meet the same fate. The parties' contracts were for the construction and sale of boats. And it is well settled that while "[c]ontracts to hire a vessel are wholly maritime . . . contracts to sell a ship are not." Natasha, Inc. v. Evita Marine Charters, Inc., 763 F.2d 468, 470 (1st Cir. 1985); see also 2 Am. Jur. 2d Admiralty § 60 (2018) ("A contract for the sale of a vessel is generally not within a federal court's admiralty jurisdiction because such a contract is not maritime in nature.").

As for diversity jurisdiction, both parties agree that 28 U.S.C. § 1441 would normally bar removal on this basis because Blount is a Rhode Island citizen. Blount argues, however, that Wendella waived this procedural hurdle to removal when it filed a motion to vacate in this Court. See Samaan v. St. Joseph Hosp., 670 F.3d 21, 28 (1st Cir. 2012). Blount's argument fails. In its Motion to Vacate, Wendella explicitly reiterated its position that the Motion should be decided in state court. Wendella also moved to stay its Motion to Vacate until the decision on its Motion to Remand. Cf. id. (finding waiver where plaintiff first raised citizenship objection after he had "litigated the case for years"

in federal district court); Johnson v. Odeco Oil & Gas Co., 864 F.2d 40, 42 (5th Cir. 1989) (affirming decision that plaintiff had waived citizenship objection to removal where it was first raised only after "considerable discovery [had] take[n] place under federal court auspices for nearly a year"). Thus, Wendella has not waived the statutory impediment to an in-forum defendant's removal in diversity cases.

In light of the foregoing, the Court remands Wendella's Petition to Vacate to state court.

B. Abstention

Anticipating this result, Wendella has moved the Court to abstain from deciding Blount's Petition to Confirm pursuant to the abstention doctrine discussed in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817-20 (1976). That doctrine allows a federal district court to stay or dismiss a case properly before it for reasons of "wise judicial administration." Colorado River, 424 U.S. at 818. The First Circuit has articulated a list of factors[2] for a district court to consider when determining

---

[2] These are:

(1) whether either court has assumed jurisdiction over a res; (2) the geographical inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived

11

whether to abstain under Colorado River. Rio Grande, 397 F.3d at 71-72. None is determinative, id. at 72; they are not collectively exhaustive id. at 71; and "[t]he weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983).

The Court agrees with Wendella that wise judicial administration counsels in favor of abstention in this case. Though not by much, the state court was first to obtain jurisdiction over the parties' dispute regarding the validity of the arbitration award. Allowing the state court to proceed out of the shadow of a parallel federal case will avoid piecemeal litigation. Am. Int'l Underwriters, Inc. v. Cont'l Ins. Co., 843 F.2d 1253, 1258 (9th Cir. 1988) ("Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results."). More important, the state court is perfectly capable of protecting the parties' interests. See Vulcan Chem. Tech., Inc. v. Barker, 297 F.3d 332, 341 (4th Cir. 2002) (finding that Colorado River "abstention may be granted only when 'the parallel state-court litigation will be an adequate vehicle

---

nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 71-72 (1st Cir. 2005).

for the complete and prompt resolution of the issues between the parties'" (quoting Moses H. Cone, 460 U.S. at 28)). As the Supreme Court has explained, "state courts . . . are obliged to honor and enforce agreements to arbitrate," and are often called upon to do so as a result of the FAA's failure to provide parties federal question jurisdiction. Vaden, 556 U.S. at 71; see also id. at 59 ("Given the substantive supremacy of the FAA, but the Act's nonjurisdictional cast, state courts have a prominent role to play as enforcers of agreements to arbitrate.").

In addition, deferring to state court here avoids the unfortunate situation corrected by the Fourth Circuit in Vulcan. See 297 F.3d at 340-44. The parties there arbitrated a commercial dispute, after which the victor moved to confirm the award in state court, but not before the loser had moved to vacate in federal court. Id. at 336-37. The two actions proceeded simultaneously and ultimately resulted in contradiction: the award was confirmed in state court, but vacated in federal court. Id. at 337. On appeal, the Fourth Circuit vacated the judgement below, finding that the district court had abused its discretion by not abstaining under Colorado River. Id. at 340-44. The court found that a situation in which one court is deciding whether to vacate an arbitration award already confirmed by another constituted "extraordinary circumstances" that militated in favor of abstention: "when two competing parallel actions seek to apply the same law in deciding

13

whether to enforce or vacate the same arbitration award, maintaining a harmonious relationship between the states and the federal government requires consideration of more complex principles than mere principles of duality." Id. at 340-41; accord Atkinson v. Grindstone Capital, LLC, 12 F. Supp. 3d 156, 162 (D.D.C. 2014) (applying Colorado River abstention where there was "parallel federal and state court actions dealing with the validity of an arbitration award").

Rather than go forward with hope that proceedings in two separate fora will produce consistent results, the Court – "giving regard to conservation of judicial resources and comprehensive disposition of litigation" – elects to abstain. Colorado River, 424 U.S. 817 (quotation marks omitted). Arbitration would soon lose some of its virtue as a speedy method of dispute resolution if afterwards still-bickering parties were often caught in a prisoner's dilemma resolved suboptimally in the prosecution of post-award motions in separate courts. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991) ("[B]y agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." (quotation marks omitted)).

III. Conclusion

For the above reasons, Wendella's Motion to Remand (C.A. No. 17-388 WES, ECF No. 7) and Motion to Abstain (C.A. No. 17-368 WES, ECF No. 7) are GRANTED. The first above-captioned case is therefore remanded, and the second is dismissed. The parties shall conduct their post-arbitration skirmish in state court.

IT IS SO ORDERED.

/s/ WESmith
William E. Smith
Chief Judge
Date: March 30, 2018